O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#20
Feb. 28 hrg vacated

CIVIL MINUTES - GENERAL

| Case No. | CV 10-7560 PSG (DTBx) | Date | February 22, 2011 |
|---|---|---|---|
| Title | Hartford Life & Annuity Ins. Co. v. Doris Barnes Family 2008 Irrevocable Trust, *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **(In Chambers) Order Denying Defendant's Motion to Dismiss**

Pending before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving and opposing papers, the Court DENIES Defendant's Motion to Dismiss.

I.   Background

On October 8, 2010, Plaintiff Hartford Life and Annuity Insurance Company ("Plaintiff" or "Hartford") filed this lawsuit against Doris Barnes Family 2008 Irrevocable Trust (the "Trust"), Gary Barnes as predecessor to the current trustee of the Trust, Johann John Jean ("Jean"), Renaissance Life Insurance Investment Trust II, and Novel Capital Ventures LLC (collectively, "Defendants"). Plaintiff's Complaint asserts claims for (1) declaratory judgment, (2) fraudulent inducement, (3) fraud, (4) negligent misrepresentation, and (5) civil conspiracy.

The Complaint alleges that Defendants, acting together, induced Hartford to issue an $8.75 million life insurance policy on the life of Doris Barnes (the "Policy") by making false statements and concealing material facts on the Policy application. *See Compl.* ¶ 1. Gary Barnes was trustee of the Trust, which purchased the Policy and was the beneficiary of the Policy. Despite this, Hartford alleges that neither the Policy nor the Trust were intended for legitimate purposes. *See id.* ¶ 23. Instead, the "Policy was procured for the purpose of transferring it, either directly or indirectly, into the second market for life insurance." *Id.* ¶ 2.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#20
Feb. 28 hrg vacated

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7560 PSG (DTBx) | Date | February 22, 2011 |
|---|---|---|---|
| Title | Hartford Life & Annuity Ins. Co. v. Doris Barnes Family 2008 Irrevocable Trust, *et al.* | | |

This type of scheme, commonly referred to as a stranger originated life insurance ("STOLI") transaction, depends on the recent emergence of a secondary market in which speculative investors seek to obtain a pecuniary interest in life insurance policies. *See id.* ¶ 14. Jean allegedly approached Doris Barnes and induced her to participate in the STOLI scheme by offering a significant amount of money in exchange for transferring over the beneficial interest in the Policy and by offering to cover the costs associated with the Policy, once the Policy issued. *Id.* ¶ 19. Jean also recommended the creation of the Trust to reduce the appearance of improprieties. *Id.* ¶ 20.

Hartford, in an effort to avoid STOLI policies, includes certain questions on its life insurance application related to "whether the insured or proposed owner has discussed selling the policy or an interest in the policy, whether the premium payments are being financed either directly or indirectly, and whether financial incentives have been offered to the insured or proposed owner of the policy." *Id.*¶ 16. Each of the questions on the Barnes' application were "answered in the negative," *id.* ¶ 29, as were similar questions answered by Jean as a "Producer," *id.* ¶¶ 33, 36. Hartford alleges that the questions were falsely answered in an effort to procure the life insurance policy and reassign the beneficial interest.

The Policy was issued on April 28, 2007, and "soon thereafter ([ ] no later than June 11, 2007), the beneficial interest in the Policy was transferred to 'stranger investors.'" *Id.* ¶¶ 2, 50. Important for purposes of this Order, Hartford alleges that "the Policy was procured through a plan, scheme or design to, and with an agreement in place prior to policy issuance to, transfer the beneficial interest in the Policy to stranger investors seeking to wager on the life of Doris Barnes." *Id.* ¶ 1. For these reasons, Hartford alleges that the Policy is void *ab initio*, or from the beginning. *Id.* ¶ 4.

The Trust Defendant filed the pending Motion to Dismiss counts two, three, four and five of Plaintiff's Complaint and Plaintiff's count one claim for damages under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court DENIES the Trust's motion.

II.     <u>Legal Standard</u>

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a cause of action if the plaintiff fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). In evaluating the sufficiency of a complaint under Rule 12(b)(6),

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#20
Feb. 28 hrg vacated

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7560 PSG (DTBx) | Date | February 22, 2011 |
|---|---|---|---|
| Title | Hartford Life & Annuity Ins. Co. v. Doris Barnes Family 2008 Irrevocable Trust, *et al.* | | |

courts must be mindful that the Federal Rules of Civil Procedure generally require only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required to survive a Rule 12(b)(6) motion to dismiss, a complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, —U.S.—, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Rather, the complaint must allege sufficient facts to support a plausible claim to relief. *See id*.

      In evaluating a Rule 12(b)(6) motion, the Court must engage in a two-step analysis. *See id*. at 1950. First, the Court must accept as true all non-conclusory, factual allegations made in the complaint. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). Based upon these allegations, the Court must draw all reasonable inferences in favor of the plaintiff. *See Mohamed v. Jeppesen Dataplan, Inc*., 579 F.3d 943, 949 (9th Cir. 2009). Second, after accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the Court must determine whether the complaint alleges a plausible claim to relief. *See Iqbal*, 129 S. Ct. at 1950. Despite the liberal pleadings standards of Rule 8, conclusory allegations will not save a complaint from dismissal. *See id*.

      Finally, the Court notes that in ruling on a motion to dismiss, the Court may consider documents outside the pleadings without the proceeding turning into summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). In particular, the Court may consider (a) documents that are "properly submitted as part of the complaint,"(b) documents on which plaintiff's complaint necessarily relies and whose authenticity is not contested, and (c) "matters of public record" of which the court may take judicial notice under Rule 201 of the Federal Rules of Evidence. *See id*. (internal quotations omitted).

III.    <u>Discussion</u>

      As mentioned, the Trust seeks dismissal of counts two through five of Plaintiff's Complaint, as well as Plaintiff's claim for damages under count one. The Court will first address the Trust's argument related to dismissal of counts two through five, then move on to the Trust's argument related to dismissal of Plaintiff's claim for damages under count one.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#20
Feb. 28 hrg vacated

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7560 PSG (DTBx) | Date | February 22, 2011 |
|---|---|---|---|
| Title | Hartford Life & Annuity Ins. Co. v. Doris Barnes Family 2008 Irrevocable Trust, *et al.* | | |

A.   Whether Counts Two Through Five are Time Barred

California law requires that life insurance policies include an incontestability clause stating that "after [the policy] has been in force, during the lifetime of the insured, for a period of not more than two years after its date of issue," the policy cannot be contested except under limited circumstances including nonpayment of premiums.  Cal. Ins. Code § 10113.5(a).  The Trust argues that this California law, and the corresponding incontestability clause in the Policy, *see Compl.*, Ex. 1 pg. 61, prevents Hartford from asserting claims two through five in the Complaint.  The Court disagrees.

In California, no life insurance contract is valid unless the insured has an "insurable interest."  Cal. Ins. Code § 280.  California law defines an insurance interest as "an interest based upon a reasonable expectation of pecuniary advantage through the continued life, health, or bodily safety or another person and consequent loss by reason of that person's death or disability or a substantial interest engendered by love and affection in the case of individuals closely related by blood or law."  Cal. Ins. Code § 10110.1(a).  In the words of the United States Supreme Court, "there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured."  *Warnock v. David*, 104 U.S. 775, 779, 26 L. Ed. 924 (1881).  Without an insurable interest, "the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured.  Such policies have a tendency to create a desire for the event.  They are, therefore, independently of any statute on the subject, condemned, as being against public policy."  *Id.*; *see also Amex Life Assurance Company v. Superior Court*, 14 Cal. 4th 1237, 1236-39, 60 Cal. Rptr. 2d 898 (1997).  While there need be an insurable interest for a life insurance policy to be valid, that interest is only required to be present "when the insurance takes effect," and not necessarily anytime after, including when the "loss occurs."  Cal. Ins. Code § 286.  The lack of an insurable interest at the time of issuance makes a life insurance policy invalid *ab initio*.  *See Paul Revere Life Ins. Co. v. Fima*, 105 F.3d 490, 493 (9th Cir. 1997) (explaining that an insurance policy lacking an insurable interest is void *ab initio*).

Slightly complicating matters in challenges to life insurance policies more than two years old are the incontestability clauses required under California law.  *See* Cal. Ins. Code § 10113.5(a).  Justice Holmes stated the purpose behind incontestability clauses: "The object of the clause is plain and laudable-to create an absolute assurance of the benefit, as free as may be

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#20
Feb. 28 hrg vacated

CIVIL MINUTES - GENERAL

| Case No. | CV 10-7560 PSG (DTBx) | Date | February 22, 2011 |
|---|---|---|---|
| Title | Hartford Life & Annuity Ins. Co. v. Doris Barnes Family 2008 Irrevocable Trust, *et al.* | | |

from any dispute of fact except the fact of death, and as soon as it reasonably can be done." *Nw. Life Ins. Co. v. Johnson*, 254 U.S. 96, 101-02, 41 S. Ct. 47, 65 L. Ed. 155 (1920). California courts strictly enforce these clauses while giving them broad effect. *See Amex Life Ins. Co.*, 14 Cal. 4th at 1237-38 (citing a number of California court cases and the circumstances warranting enforcement of incontestability clauses). Even in cases of misrepresentations and fraud, incontestability clauses are enforced. *See Dibble v. Reliance Life Ins. Co.*, 17 Cal. 199, 208 (1915) ("a provision in a life insurance policy to the effect that after being in force for the specified time, it shall be incontestable, precludes any defense after the stipulated period on account of false statements warranted to be true, even though such statements were fraudulently made"); *see also Amex Life Ins. Co.*, 14 Cal. 4th at 1237 (stating that incontestability clauses do not "condone fraud but merely establish[] a time limit within which it must be raised"). Nevertheless, an incontestability clause does not preclude a challenge to a life insurance policy "on the ground that it is void *ab initio* for lack of insurable interest." *Fima*, 105 F.3d at 492 ("[W]here . . . an incontestability clause is in effect, an insurance policy may be challenged *only* on the ground that it is void *ab initio* for lack of an insurable interest." (emphasis added)); *see also* Cal. Ins. Code § 280 ("If the insured has no insurable interest, the contract is void.").

     In this case, the Policy, containing a two year incontestability clause, was issued on April 28, 2007 and the Complaint was filed more than two years later, on October 8, 2010. Unless Plaintiff challenges the Policy on the ground that it is void *ab initio* for lack of an insurable interest, Plaintiff's claims are likely barred by the incontestability clause.

     The gravamen of the Complaint is that the participants in the STOLI scheme, for whom the Policy was allegedly procured, had no insurable interest. *See Compl.* ¶¶ 1, 4. Indeed, it is a violation of California's insurable interest law to create "[a]ny device, scheme, or artifice designed to give the appearance of an insurable interest where there is no legitimate insurable interest." Cal. Ins. Code § 10110.1(e). More specifically, "any arrangement by which a life insurance policy is initiated for the benefit of a 'third party investor' who has no insurable interest in the insured's life at the time the policy is issued is deemed a STOLI, which is a prohibited 'fraudulent life settlement act'." *Ohio Nat'l Life Assurance Corp. v. Davis*, No. CV 10-4241 ODW, 2010 WL 4916643, at *4 (C.D. Cal. Dec. 1, 2010); *see also Lincoln Nat'l Life Ins. Co. v. Calhoun*, 596 F. Supp. 2d 882, 889 (D.N.J. 2009) (applying California law and noting that "[i]nsured begin to run afoul of the insurable interest requirement . . . when they intend at the time of the policy's issuance, to profit by transferring the policy to a stranger with no insurable interest at the expiration of the contestability period"). As the Complaint alleges that

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#20
Feb. 28 hrg vacated

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7560 PSG (DTBx) | Date | February 22, 2011 |
|---|---|---|---|
| Title | Hartford Life & Annuity Ins. Co. v. Doris Barnes Family 2008 Irrevocable Trust, *et al.* | | |

"the Policy was procured through [Defendants'] plan, scheme or design to, and with an agreement in place prior to policy issuance to, transfer the beneficial interest in the Policy" to third-parties without insurable interests, Plaintiff's claims are not barred by the Policy's incontestability clause.

  B.  <u>Whether Plaintiff's Claim for Relief under Count One Should be Dismissed</u>

  The Trust also argues that Hartford's request for a declaration from the Court that it may retain "some or all of the premiums paid on the Policy" is without legal basis, "[e]ven if Hartford were to succeed in proving a lack of insurable interest when the Policy was issued." *See Mot.* 6:25-7:3; *see also Compl.* 19:19-26 (Relief Requested). The Court disagrees here as well.

  The Trust cites the general principle that when a party requests rescission of a contract, the party must return all consideration paid in order to restore the *status quo ante*. *See Mot.* 7:2-25. Hartford, on the other hand, insists that "where a policy has been procured by fraudulent misrepresentation, concealment or deception of the insured or his agent, 'the insured has no right to the return of the premium.'" *Opp'n* 7:25-27 (quoting Couch on Insurance 3d, § 79:40). Moreover, Hartford argues the rules governing return of consideration upon rescission do not apply because it is not specifically seeking rescission, but only a declaration that the Policy is void *ab initio*. *Opp'n* 10:1-11:6.

  Regardless of whether the relief sought is characterized as rescission or a judicial declaration that the Policy is void, at this stage of the litigation it would be premature to dismiss Hartford's request to retain "some or all of the [Policy's] premiums." The Complaint's Request for Relief seeks an order of the Court declaring that "Hartford may retain *some or all* of the premiums paid on the Policy to offset its costs associated with the issuance of the Policy." *See Compl.* 19:19-26 (Relief Requested) (emphasis added). Moreover, Hartford's first count in the Complaint for declaratory relief states that Defendants' conduct caused Hartford to "expend money and resources including, but not limited to, the costs of underwriting, issuance, payment of commissions, administration, service, and investigations associated with the Policy, in addition to those expenses incurred in bringing this action for relief." *See id.* ¶ 59. This type of relief may be available, and it can come from the premiums collected. *See PHL Variable Ins. Co. v. Clifton Wright Family Ins. Trust*, No. CV 09-2344 BTM, 2010 WL 1445186, at *2-3 (S.D. Cal. April 12, 2010).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#20
Feb. 28 hrg vacated

CIVIL MINUTES - GENERAL

| Case No. | CV 10-7560 PSG (DTBx) | Date | February 22, 2011 |
|---|---|---|---|
| Title | Hartford Life & Annuity Ins. Co. v. Doris Barnes Family 2008 Irrevocable Trust, *et al.* | | |

Although restoring the other "party of everything of value which he has received from him under the contract" is generally required in cases seeking rescission, *see* Cal. Civ. Code § 1691, an insurer may nevertheless seek compensation for damages incurred because of the other party's conduct. *Id.* (citing Cal. Civ. Code § 1692 for the proposition that "[t]he aggrieved party shall be awarded complete relief . . ."). More specifically, "the insurer may seek damages from the insured as a consequence of the rescission of the policy," and "the insurer 'shall be awarded *complete relief*, including . . . any consequential damages to which he is entitled.'" *Id.* (quoting Cal. Civ. Code § 1692) (emphasis in original). Hartford has requested that it keep "some or all of the premiums paid on the Policy to offset its costs associated with the issuance of the Policy." *See Compl.* 19:19-26. As the Court explained in *PHL Variable Ins. Co.*, "[g]iven that the primary purpose of [Cal. Civ. Code] § 1692 is to afford the aggrieved party complete relief, Plaintiff's request is not barred." *PHL Variable Ins. Co.*, 2010 WL 1445186, at *2 (citing *Runyan v. Pac. Air. Indus., Inc.*, 2 Cal. 3d 304, 316, 85 Cal. Rptr. 138 (1970); *Akin v. Certain Underwriters at Lloyd's London*, 140 Cal. App. 4th 291, 296, 44 Cal. Rptr. 3d 284 (2006)).

IV. Conclusion

Based on the foregoing, Defendant Trust's Motion to Dismiss is DENIED.

**IT IS SO ORDERED.**