1   WILLIAM A. MOLINSKI (State Bar No. 145186)
    wmolinski@orrick.com
2   KHAI LEQUANG  (State Bar No. 202922 )
    klequang@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    777 South Figueroa Street, Suite 3200
4   Los Angeles, CA 90017
    Telephone:   213-629-2020
5   Facsimile:   213-612-2499

6   STEPHEN G. FORESTA (*pro hac vice*)
    sforesta@orrick.com
7   PHILIPP SMAYLOVSKY (*pro hac vice*)
    psmaylovsky@orrick.com
8   ORRICK, HERRINGTON & SUTCLIFFE LLP
    51 West 52nd Street
9   New York, NY  10019-6142
    Telephone:  +1-212-506-5000
10  Facsimile:  +1-212-506-5151

11  Attorneys for Andrew Dominus, Esq., in his
    capacity as successor trustee of Defendant
12  Doris Barnes Family 2008 Irrevocable Trust

13              UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15

16  HARTFORD LIFE AND ANNUITY          Case No.  2:10-CV-07560-PSG-DTB
    INSURANCE COMPANY,
17                                     **DEFENDANT DORIS BARNES**
                 Plaintiff,            **FAMILY 2008 IRREVOCABLE**
18                                     **TRUST'S MOTION FOR**
         vs.                           **SUMMARY JUDGMENT OR, IN**
19                                     **THE ALTERNATIVE MOTION**
    DORIS BARNES FAMILY 2008           **FOR PARTIAL SUMMARY**
20  IRREVOCABLE TRUST, GARY            **JUDGMENT**
    BARNES, as Trustee of the Doris
21  Barnes Family 2008 Irrevocable Trust,   Date: January 30, 2012
    JOHANN JOHN JEAN,                  Time: 1:30 p.m.
22  RENAISSANCE LIFE INSURANCE         Room: 880
    INVESTMENT TRUST II, and
23  NOVEL CAPITAL VENTURES, LLC,       Fact Discovery Cutoff:  December 30,
                                       2011
24               Defendants.          Pretrial Conference:  February 13,
                                       2012
25                                     Trial Date:  February 28, 2012
                                       Date Action Filed:  October 8, 2010
26

27              **PUBLIC REDACTED VERSION**

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................1

II.    FACTUAL HISTORY...............................................................................2

    A.     Mrs. Barnes Applies For And Obtains The Policy .............................2

    B.     Donald Barnes Sells His Beneficial Interest In The Trust And, By Extension, The Policy....................................................................6

III.   THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF THE TRUST...................................................................................8

    A.     The Policy Is Not Void *Ab Initio* Because An Insurable Interest Existed At The Time The Policy Was Issued .....................................9

        1.     California Law Requires An Insurable Interest At The Time That A Life Insurance Policy Takes Effect, But Not Thereafter ...............................................................................10

        2.     California Law Expressly Permits The Assignment Of A Policy To Someone Without An Insurable Interest ................12

        3.     The Insured's And Beneficiary's Intent To Sell A Policy Are Not Relevant To Whether An Insurable Interest Existed When The Policy Took Effect ...................................13

    B.     The Evidence Does Not Support Hartford's Claims For Fraud, Fraudulent Inducement, And Negligent Misrepresentation Against The Trust ............................................................................16

    C.     Hartford's Claims for Fraud And Negligent Misrepresentation Are Time-Barred By The Incontestability Clause ............................19

    D.     The Evidence Does Not Support Hartford's Claims Against The Trust For Conspiracy To Commit Fraud ..........................................21

IV.    CONCLUSION ......................................................................................23

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)...........................................................................8

Bankers Sec. Life Ins. Soc. v. Kane,
885 F.2d 820 (11th Cir. 1989).........................................................20

Barnett v. Centoni,
31 F.3d 813 (9th Cir. 1994)................................................................8

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)...........................................................................8

Harper v. Wallingford,
877 F.2d 728 (9th Cir. 1989)..............................................................8

Lincoln Nat'l Life Ins. Co. v. Gordon R.A. Fishman Irrevocable Life
Trust,
638 F. Supp. 2d 1170 (C.D. Cal. 2009).............................. 11, 15, 16

Paul Revere Life Ins. Co. v. Fima,
105 F.3d 490 (9th Cir. 1997)............................................................21

T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,
809 F.2d 626 (9th Cir. 1987)..............................................................8

## STATE CASES

Amex Life Ins. Co. v. Super. Ct.,
14 Cal. 4th 1231 (1997) ............................................................ 19, 20

Choate v. County of Orange,
86 Cal. App. 4th 312 (2000)...................................................... 21, 22

Cook v. Cook,
17 Cal. 2d 639 (1941) ......................................................................12

Dibble v. Reliance Life Ins. Co.,
170 Cal. 199 (1915).........................................................................20

Fox v. Pollack,
181 Cal. App. 3d 954 (1986)...................................................... 17, 18

In re Marriage of Bratton,
28 Cal. App. 4th 791 (1994)...................................................... 10, 11

John Hancock Mut. Life Ins. Co. v. Greer,
60 Cal. App. 4th 877 (1998)............................................................19

Lazar v. Superior Court,
12 Cal. 4th 631 (1996) ....................................................................17

Lewis v. Reed,
48 Cal. App. 742 (1920) ............................................................ 12, 13

Lincoln Life & Annuity Co. of N.Y. v. Berck,
No. 37-2008-00083905-CU-CO-CTL, 2011 WL 1878855 (Cal. Ct.
App. May 17, 2011)..................................................... 14, 15, 16

Mosier v. S. Cal. Physicians Ins. Exch.,
63 Cal. App. 4th 1022 (1998)..........................................................21

1

2

## TABLE OF AUTHORITIES
(continued)

**Page**

People v. Aldana,
   94 Cal. Rptr. 3d 831 (2009) ............................................................18

Shaw v. Board of Admin.,
   109 Cal. App. 2d 770 (1952)...........................................................11

Shaw v. Johnson,
   15 Cal. App. 2d 599 (1936)..............................................................11

United Fid. Life Ins. Co. v. Emert,
   49 Cal. App. 4th 941 (1996).............................................................19

Yanase v. Auto. Club of So. Cal.,
   212 Cal. App. 3d 468 (1989).............................................................18

### STATUTES

Cal. Civ. Code § 2764...........................................................................13

Cal. Ins. Code § 10110.1......................................................................11

Cal. Ins. Code § 10110.1(a) .............................................. 10, 11, 13, 16

Cal. Ins. Code § 10110.1(b) .....................................................11, 12

Cal. Ins. Code § 10110.1(e) .................................................................16

Cal. Ins. Code § 10110.1(f).................................................................10

Cal. Ins. Code § 10113.5......................................................................19

Cal. Ins. Code § 10130.................................................................12, 13

Cal. Ins. Code § 286.............................................................................10

### RULES

Fed. R. Civ. P. 56(a) .............................................................................8

### OTHER AUTHORITIES

44 Am. Jur. 2d Insurance § 778 ..........................................................20

*Personal Life Insurance Trusts*,
   807 Tax Mgmt. (BNA) A-1 ..............................................................11

Scott, *The Law of Trusts*,
   § 57.3 (4th ed. 1987).........................................................................11

Scott, *The Law of Trusts*,
   § 84.1 (4th ed. 1987).........................................................................11

## I.     INTRODUCTION

Hartford filed this action seeking a declaration that a life insurance policy (the "Policy") that Hartford issued on the life of Doris Barnes is void for lack of insurable interest.  According to Hartford, no one with an interest in the life of Mrs. Barnes had an interest in the Policy at the time it was issued.  However, the ultimate beneficiary of the Policy was Mrs. Barnes's husband, Donald Barnes.  Mr. Barnes clearly had an insurable interest in Mrs. Barnes's life, therefore the Policy was issued to someone with an insurable interest, and under black-letter California law, the Policy is valid.

The gist of Hartford's claim is that because Mr. Barnes intended to sell his beneficial interest in the Policy when Mrs. Barnes applied for it, the Policy was not issued to someone with an insurable interest.  Mr. Barnes's intent to sell his beneficial interest, however, does not negate his insurable interest, and a life insurance policy is not void because it was sold after it was issued, even if the beneficiary intended to sell his interest at the time the policy was issued.  California statutory law expressly provides that an insurable interest must exist when a policy "takes effect, but need not exist thereafter," and that a life insurance policy may be sold to anyone, "whether or not the transferee has an insurable interest."  Consistent with these statutory provisions, life insurance policies, including the Policy in this case, provide that they are assignable, and individuals purchase life insurance in reliance on this legal and contractual right.  It would be a gross misapplication of the insurable interest law to void a policy because the insured or beneficiary intended to exercise the right to assign it.

There is not a single California case that holds that a life insurance policy is void for lack of insurable interest because the insured or beneficiary intended to sell the policy to someone without an insurable interest.  To the contrary, the California Court of Appeal expressly rejected this contention earlier this year.  Relying on an opinion from the Central District of California, the Court of Appeal

1  held that an insurance company cannot avoid its obligations under a policy because
2  an insured "intended to exercise [his] right to sell or transfer" his policy.  In sum,
3  Hartford cannot avoid its obligations under the Policy because it was sold or
4  purchased with the intent to sell it, and the Court should grant summary judgment
5  in favor of the Trust on Hartford's first claim.

6       Hartford also has asserted claims against the Trust for fraud and negligent
7  misrepresentation based on the alleged conduct of the original trustee, Gary
8  Barnes.  Not only are these claims barred by the Policy's incontestability clause,
9  but they are meritless.  It is undisputed that Gary Barnes, the son of Doris and
10  Donald Barnes, did not provide any allegedly false answers to the questions in the
11  Policy application and that he did not provide any fraudulent documents to
12  Hartford during the application process.  Someone may have provided false
13  information to Hartford, but it was not Gary Barnes or the Trust acting through
14  Gary Barnes.  Gary Barnes did not know or have any reason to believe that any
15  statements in the Policy application were false, and he reasonably relied upon his
16  parents to provide truthful and accurate responses.

17       The Trust also is entitled to summary judgment on Hartford's claim that it
18  conspired with Johann John Jean, Renaissance Life Insurance Investment Trust II
19  ("Renaissance"), and Novel Capital Ventures, LLC ("Novel").  Gary Barnes, the
20  original trustee, agreed to help his parents apply for the Policy as a favor to his
21  father, but he knew very little about the details of the policy.  He did not conspire
22  with anyone to commit fraud or conceal anything from Hartford, nor is there any
23  evidence of such a conspiracy.

24  **II.   FACTUAL HISTORY**
25       **A.   Mrs. Barnes Applies For And Obtains The Policy**
26       In 2007, Doris Barnes and her husband, Donald Barnes, spoke with Johann
27  John Jean about purchasing some life insurance.  (Statement of Uncontroverted
28  Facts and Conclusions of Law ("UF") ¶ 1.)  Mr. and Mrs. Barnes met with

1   Mr. Jean and other insurance agents of Diverse Financial ("Diverse"), an insurance

2   agency authorized to sell Hartford products, approximately ten times and also

3   spoke with them on the phone several times.  (UF ¶¶ 2, 3.)  Mr. Barnes (who

4   recently passed away) handled most of the discussions between the Barnes family

5   and Mr. Jean and Diverse.  (UF ¶ 4.)  After it was determined that Donald Barnes

6   was not in good enough health to permit him to obtain insurance on his own life,

7   only Doris Barnes proceeded to obtain a policy.  (UF ¶ 5.)

8          ▮▮▮▮▮▮▮▮▮▮▮, the Doris Barnes Family 2008 Irrevocable Trust (the

9   "Trust") was formed pursuant to the Doris Barnes Family 2008 Irrevocable Trust

10  Agreement (the "Trust Agreement"), which was executed on ▮▮▮▮▮▮▮▮ by

11  Doris Barnes, as the trust settlor, and her son, Gary Barnes, as the trustee.  (UF

12  ¶ 6.)  Gary Barnes was asked to be the trustee by his parents.  (UF ¶ 7.)  Donald

13  Barnes was designated the sole beneficiary of the Trust.  (UF ¶ 8.)  ▮▮▮▮▮▮▮

14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16  ▮▮▮▮▮▮▮▮▮▮▮  (UF ¶ 9.)

17         On January 31, 2008, Doris Barnes, as the named insured, and Gary Barnes,

18  as the trustee of the Trust, executed an application for an $8.75 million insurance

19  policy on Doris Barnes's life.  (UF ¶ 10.)  Mrs. Barnes then authorized Mr. Jean to

20  submit the application and understood that Mr. Jean would attempt to procure as

21  much insurance on her life as possible.  (UF ¶ 11.)  At the time Mrs. Barnes

22  applied for the Policy, she and her husband intended to sell the Policy, but there

23  was no agreement in place to do so, and Mrs. Barnes did not know when the

24  contemplated sale would take place or to whom the Policy would be sold.  (UF

25  ¶ 12.)

26         Gary Barnes, the trustee of the Trust, did not receive a copy of the policy

27  application, and he relied upon his parents to provide all of the information

28  required to apply for the Policy.  (UF ¶ 13.)  Although Gary Barnes signed the

1   documents that his mother and father asked him to sign, including the application,

2   he did not provide responses to any of the questions in the application.  (UF ¶ 14.)

3   He did not believe that any of these documents contained false information, nor did

4   he have any reason to believe that they did.  (UF ¶ 14.)

5   █████████████████████████████

6   █████████████████████████████

7   █████████████████████████████

8   █████████████████████████████

9   (UF ¶ 17.)

10   █████████████████████████████

11   ██████████████████████   (UF ¶ 18.)

12   Two days later, on April 30, 2008, Gary Barnes signed the Policy Delivery

13   Receipt.  (UF ¶ 23.)  Although Mrs. Barnes believed that there was an agreement

14   to sell the Policy and that Mr. Jean and Diverse were working on that agreement,

15   there was no such agreement in place at the time Hartford issued the Policy.  (UF

16   ¶ 21.)  As she testified in her deposition:

17         Q.   At the time the policy was issued, had you met with anybody

18   who said that they were buying the policy?

19         A.   No.

20         Q.   Had anybody told you—

21         A.   No.

22         Q.   —that they were buying the policy?

23         A.   No.

24         ***

25         Q.   Had you signed any documents that you understood bound you

26   to sell your policy to somebody?

27         A.   No.

28   (UF ¶ 21, *citing* LeQuang Decl. in support of Defendant Doris Barnes Family 2008

Irrevocable Trust's Motion for Summary Judgment or, in the Alternative Motion for Partial Summary Judgment ("LeQuang Decl."), Ex. A (Transcript of Deposition of Doris Barnes dated September 8, 2011 ("D. Barnes Depo. Tr.") 145:9-18, 145:24-146:1.)  Mr. Jean likewise testified:

> Q.   So by April 30, 2008, the date of this policy receipt—
>
> A.   Uh-hmmm.
>
> Q.   —were you aware of any agreement between Doris Barnes and anyone else to sell the policy?
>
> A.   No.
>
> Q.   By this time were you aware of any agreement between Donald Barnes and anyone else to sell the policy?
>
> A.   No.
>
> Q.   By this time were you aware of any agreement between Gary Barnes and anyone else to sell the policy?
>
> A.   No.
>
> Q.   By this time were you aware of any agreement between the trust and anyone to sell the policy?
>
> A.   No.
>
> Q.   Had any of those people told you that they were entering into or contemplating an agreement with anyone else to sell the policy?
>
> A.   No, not at all.

(UF ¶ 21, *citing* LeQuang Decl., Ex. B (Transcript of Deposition of Johann John Jean dated September 7, 2011 ("Jean Depo. Tr.")) 161:5-24.  See also UF ¶¶ 33, 35, 37, 41, 43.)

Moreover, Mrs. Barnes and Gary Barnes both understood that from the time the Policy was issued and until it was sold, Donald Barnes would receive the Policy benefits in the event of Mrs. Barnes's death.  (UF ¶ 22.)

///

**B.** **Donald Barnes Sells His Beneficial Interest In The Trust And, By Extension, The Policy**



(UF ¶ 26.)

(UF ¶ 27.)

(UF ¶ 25.)

(UF ¶ 29.)

(UF ¶ 30.)  Shortly thereafter, ⬛⬛⬛, Mr. Barnes wrote a check to Hartford for ⬛⬛ to pay the initial premium on the Policy.  (UF ¶ 31.)

(UF ¶ 33.)

Neither KBCFP nor any of its affiliates, including Midas, solicited Doris, Donald or Gary Barnes or any of their representatives to sell Mr. Barnes's interest in the Trust or the Policy.  (UF ¶ 34.)  KBCFP and its affiliates, including Midas, also did not solicit Doris, Donald or Gary Barnes to take out the Policy, and they

---

[1] ⬛⬛⬛ *See* LeQuang Decl., Ex. D (Transcript of Deposition of Damien Rios dated Nov. 18, 2011 ("Rios Depo. Tr.")) 160:21-161:24, 179:1-6.

1   were not involved in any way with the application for the Policy.  (UF ¶ 15.)

2   Neither KBCFP nor any of its affiliates, including Midas, paid, financed or

3   otherwise provided the funds used to pay the initial premium on the Policy.  (UF ¶

4   32.)  Neither KBCFP nor any of its affiliates, including Midas, had any interest in

5   the Trust, or the Policy held by the Trust, prior to Midas's acquisition of Mr.

6   Barnes's beneficial interest in the Trust on August 7, 2008.  (UF ¶ 41.)

7        On August 7, 2008, Midas purchased Donald Barnes's beneficial interest in

8   the Trust (which held the Policy) for ██████████.  (UF ¶ 35.)[2]  The terms of

9   Midas's purchase of Mr. Barnes's interest in the Trust were set forth in several

10  transaction documents including, among other documents, a Trust Beneficial

11  Interests Transfer Agreement (the "Transfer Agreement"), executed by Donald

12  Barnes on July 28, 2008, and an Acknowledgement and Consent to the transaction

13  (the "Acknowledgment"), executed by Doris Barnes on the same day as the

14  Transfer Agreement.  (UF ¶ 36.)  In the Transfer Agreement, Donald Barnes

15  represented and warranted, among other things, █████████████████████

16  ████████████████████████████████████████████████████

17  ███████████████████████████████████████

18  (UF ¶ 38.)  In the Acknowledgment, Doris Barnes represented and warranted,

19  among other things, ████████████████████████████████

20  ████████████████████████████████████████████████████

21  ████████████████████████████████████████████

22  ███████   (UF ¶ 39.)

23       Before the execution of the Transfer Agreement and related documents and

24  the delivery of those documents to Midas in or around late July and early August

25  2008, Donald Barnes was under no obligation to sell his beneficial interest in the

26  Policy to Midas.  (UF ¶ 37, 43.)  ████████████████████████████

---

27    [2] Although not material to this motion, Mrs. Barnes and Mr. Barnes used the proceeds from the

28  sale of the Policy to purchase annuities.  *See* LeQuang Decl., Ex. A (D. Barnes Depo. Tr.) 108:17-24.

1 ███████████████████████████████████████████

2 ███████████████████████████████████████

3 █████████████████████████████████

4 ██████████████████████████ (UF ¶ 40.)

5 ████████████████████████████████████

6 ████████████████████████████████████

7 █████████████████████████████ (UF ¶ 44.)

## III.   THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF THE TRUST

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  There is no genuine issue where the evidence is such that a reasonable trier of fact could not return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the party opposing summary judgment bears the burden of proof at trial, as is the case here, the moving party may prevail merely by pointing to the lack of evidence supporting its opponent's case.  Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir. 1994).  In such cases, a nonmoving party may only avoid summary judgment by producing "significant probative evidence" establishing the existence of a genuine issue for trial.  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (internal quotations and citations omitted).  Mere allegations, denials, and "irrelevant or unnecessary" factual disputes do not create an issue for trial.  Anderson, 477 U.S. at 248, 256.  Likewise, bald assertions that a genuine issue of fact exists will not preclude summary judgment.  See Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989).

///

///

## A.    The Policy Is Not Void *Ab Initio* Because An Insurable Interest Existed At The Time The Policy Was Issued

Hartford's first claim seeks a declaration that the Policy is void *ab initio* for lack of insurable interest.  To resolve this claim, the Court need to answer only one question:  Did someone with an insurable interest in Mrs. Barnes's life have an interest in the Policy at the time the Policy was issued?  The uncontroverted facts demonstrate that ***all*** of the parties with an interest in the Policy at the time it was issued had an insurable interest in Mrs. Barnes's life.  These parties were Gary Barnes, the trustee of the Trust that held legal title to the Policy; Donald Barnes, who was the beneficiary of the Trust and ultimate beneficiary of the Policy; and Mrs. Barnes, who was the insured and applicant.  No one else had an interest in the Policy at the time it was issued or took effect, and this is all that matters.

Hartford's complaint suggests that the sale of the Policy was part of an elaborate scheme to put the Policy into the hands of a stranger—*i.e.*, Midas.  But Midas had nothing to do with Doris Barnes's decision to apply for and purchase life insurance, or her decision to sell it.  Midas purchased the beneficiary's interest in the Policy in good faith months after it was issued.  The law does not prohibit an insured from purchasing a policy and then selling it, even if she intended to sell the Policy to begin with.

Furthermore, although Hartford has asserted claims for fraud and negligent misrepresentation against the Trust, these claims have no bearing on the existence of an insurable interest.  Insurable interest and fraud are distinct claims that present distinct legal and factual questions.  The existence of an insurable interest depends on the relationship between the insured and the beneficiary of a life insurance policy.  It is not determined by representations made by the insured or any other person.  In any event, the Trust did not make any false representations to Hartford and is entitled to summary judgment on Hartford's misrepresentation claims for reasons discussed separately.

1    The Policy was issued to someone with an insurable interest, and the Court

2  should grant summary judgment in favor of the Trust on Hartford's claim that the

3  policy is void *ab initio*.

4       **1.**     **California Law Requires An Insurable Interest At The**

5              **Time That A Life Insurance Policy Takes Effect, But Not**

6              **Thereafter**

7    The Insurance Code defines "insurable interest" as a continued interest in the

8  "life, health or bodily safety of another person . . . ."  Cal. Ins. Code § 10110.1(a).[3]

9  Section 286 of the Insurance Code further provides that "an interest in the life or

10  health of a person insured ***must exist when the insurance takes effect, but need***

11  ***not exist thereafter*** or when the loss occurs."  Cal. Ins. Code § 286 (emphasis

12  added).  Accord Cal. Ins. Code § 10110.1(f); see also In re Marriage of Bratton, 28

13  Cal. App. 4th 791 (1994) (a life insurance policy valid at its inception does not

14  cease to be so by the cessation of the insurable interest).

15    Thus, the questions to be answered under California's statutory rubric and

16  case law are: (a) who were the persons with an interest in the Policy at the time it

17  was issued; and (b) did those persons have an interest in the "life, health and bodily

18  safety of" Mrs. Barnes.  Here, there were three different persons with an interest in

19  the Policy at the time it was issued—the Trust (as the owner and beneficiary of the

20  Policy), Mr. Barnes (as the beneficiary of the Trust and ultimate beneficiary of the

21  Policy), and Mrs. Barnes (as the applicant).  All three of these persons had, as a

22  matter of law, an insurable interest in the life of Mrs. Barnes.

23    First, the Trust, which was the owner and beneficiary of the Policy, had an

24  insurable interest in Mrs. Barnes's life.  An irrevocable trust, such as the Trust,

25  may purchase and hold life insurance policies on the life of its settlor.  See Shaw v.

---

[3] Section 10110.1(a) provides in its entirety:  "An insurable interest, with reference to life and disability insurance, is an interest based upon a reasonable expectation of pecuniary advantage through the continued life, health, or bodily safety of another person and consequent loss by reason of that person's death or disability or a substantial interest engendered by love and affection in the case of individuals closely related by blood or law."

Johnson, 15 Cal. App. 2d 599, 605-06 (1936) (upholding insurable interest of life insurance trust); Lincoln Nat'l Life Ins. Co. v. Gordon R.A. Fishman Irrevocable Life Trust, 638 F. Supp. 2d 1170, 1177 (C.D. Cal. 2009) ("It is well established that an irrevocable trust . . . may purchase and hold life insurance policies on the life of its settlor"); see also Scott, *The Law of Trusts* §§ 57.3, 84.1 (4th ed. 1987) ); *Personal Life Insurance Trusts*, 807 Tax Mgmt. (BNA) A-1 ("It is well settled that an *inter vivos* trust . . . may be the owner of a life insurance policy, whether or not it is funded with other assets.").  Moreover, Gary Barnes, the trustee of the Trust, is Mrs. Barnes's son, and Donald Barnes, the beneficiary of the Trust, was her husband.

Second, Mr. Barnes, the beneficiary of the Trust and the ultimate beneficiary of the Policy, clearly had an insurable interest in Mrs. Barnes's life.  Cal. Ins. Code § 10110.1(a) (defining insurable interest as, *inter alia*, "a substantial interest engendered by love and affection in the case of individuals closely related by blood"); see In re Marriage of Bratton, 28 Cal. App. 4th at 794 (recognizing that wife had an insurable interest in her husband's life during their marriage); Shaw v. Board of Admin., 109 Cal. App. 2d 770, 773 (1952) (same).

Third, Mrs. Barnes, the insured and applicant, also clearly had an insurable interest in her own life.  Cal. Ins. Code § 10110.1(b) ("An individual has an unlimited insurable interest in his or her own life . . . and may lawfully take out a policy of insurance on his or her own life . . . .").

In sum, the uncontroverted evidence shows that Mrs. Barnes applied for the Policy, which was to be owned by the Trust, and the beneficiary of the Trust (and ultimately the Policy) at the time the Policy took effect was her husband, Donald Barnes.  (UF ¶¶ 8, 9, 10, 17, 22, 44.) ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████ (UF ¶¶ 8, 9, 18, 22, 44.) ████████████████

1 [REDACTED]

2 [REDACTED]

3 [REDACTED]   (UF ¶¶ 8, 9, 22, 44.)  Accordingly, the Policy is not void for lack of

4 an insurable interest, and the Trust is entitled to summary judgment on Hartford's

5 first claim.

6        **2.     California Law Expressly Permits The Assignment Of A**

7        **Policy To Someone Without An Insurable Interest**

8       Not only did an insurable interest exist at the time the Policy was issued, but

9 California law expressly permits the sale, transfer, and assignment of a life

10 insurance policy.  Insurance Code section 10130 provides that a policy is freely

11 alienable and may "pass by transfer, will or succession to any person, *whether or*

12 *not the transferee has an insurable interest*."  (emphasis added).  [REDACTED]

13 [REDACTED]

14 [REDACTED]   (UF ¶ 19.)

15 Moreover, Doris Barnes had a legal right to designate anyone she wanted as the

16 beneficiary of the Policy, regardless of whether that person had an insurable

17 interest in her life.  Insurance Code section 10110.1(b) provides:  "An individual

18 . . . may lawfully take out a policy of insurance on his or her own life . . . ***and have***

19 ***the policy made payable to whomever he or she pleases, regardless of whether***

20 ***the beneficiary designated has an insurable interest***."  (emphasis added).

21       The assignment of the beneficial interest in the Policy, therefore, cannot

22 possibly render the Policy void for lack of an insurable interest.  To the contrary,

23 the free alienability of policies has been an axiom of California law for almost a

24 century and reflects such an important public policy that any contractual provision

25 purporting to eliminate a policyholder's right to assign an insurance policy is itself

26 unenforceable.  <u>Lewis v. Reed</u>, 48 Cal. App. 742, 745-46 (1920); <u>Cook v. Cook</u>,

27 17 Cal. 2d 639, 644 (1941) (citing <u>Lewis</u>, 48 Cal. App. 742, with approval).

28 California courts have long recognized that section 10130 was "designedly adopted

TRUST'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:10-cv-07560-PSG-DTB

1   to set at rest any question as to the assignability of a life insurance policy and also

2   to affirm the right to make such assignment to a person having no insurable interest

3   in the life of the insured." <u>See, e.g.</u>, <u>Lewis</u>, 48 Cal. App. at 746, (discussing

4   California Civil Code section 2764, which was later codified as Insurance Code

5   section 10130).

6       Mrs. Barnes had the right to purchase the Policy, and Donald Barnes had the

7   right to sell or assign his beneficial interest in it.  The subsequent sale of the Policy

8   or of the beneficial interest in the Trust or the Policy did not eradicate the insurable

9   interest that existed at the time the Policy was issued.

10           **3.**    **The Insured's And Beneficiary's Intent To Sell A Policy Are**

11                     **Not Relevant To Whether An Insurable Interest Existed**

12                     **When The Policy Took Effect**

13       Given that an insurable interest undeniably existed when the Policy took

14   effect and Mr. Barnes had the right to sell his beneficial interest in the Policy,

15   Hartford will undoubtedly seek to confuse the legal issue by arguing that because

16   Mrs. Barnes and Mr. Barnes did not intend to keep the Policy, this somehow

17   undermines the existence of an insurable interest.  Neither California statutory law

18   nor California case law supports this position.

19       First, the definition of "insurable interest" makes no reference to an

20   insured's intent to assign a policy.  Section 10110.1(a) defines an "insurable

21   interest" as follows:

22           An insurable interest, with reference to life and disability

23           insurance, is an interest based upon a reasonable expectation of
             pecuniary advantage through the continued life, health, or

24           bodily safety of another person and consequent loss by reason
             of that person's death or disability or a substantial interest

25           engendered by love and affection in the case of individuals
             closely related by blood or law.

26       An "insurable interest" refers to the interest—pecuniary or personal—that a

27   person has in the life of the insured.  It refers to an objective, positional

28   relationship that the person has with the insured.  The insured's subjective intent to

1   sell a policy does not have any bearing on that relationship, nor does the

2   beneficiary's subjective intent to sell the policy.  A husband (Donald Barnes) who

3   is the beneficiary of a policy is still a husband and still has an insurable interest in

4   the life of his wife (Doris Barnes) even if he intends to sell the policy to which he

5   is made a beneficiary.  Moreover, the notion of intent in the context of insurable

6   interest makes little sense.  If a person intends to sell a policy but never in fact sells

7   the policy, it cannot possibly be the law that the policy is void for lack of insurable

8   interest.  Likewise, if a person intends to sell a policy and then sells it at some

9   point in the future, as intended, it cannot be the law that the policy becomes void

10  upon the sale.  What matters is whether an insurable interest existed at the time the

11  policy took effect, and that is determined solely by reference to the interest the

12  person had in the life of the insured.

13          Second, the only two courts in California to consider Hartford's position that

14  intent is relevant to insurable have expressly rejected it, holding that an insured's

15  or policyholder's intent to sell a policy is legally irrelevant to whether an insurable

16  interest existed.[4]  Earlier this year, a California Court of Appeal addressed whether

17  an insured's or policyholder's intent to transfer the beneficial interest in a life

18  insurance policy negates insurable interest and held that "the intent does not negate

19  the fact that when the trust applied for the policies, they were supported by an

20  insurable interest."  Lincoln Life & Annuity Co. of N.Y. v. Berck, No. 37-2008-

21  00083905-CU-CO-CTL, 2011 WL 1878855, at *7 (Cal. Ct. App. May 17, 2011)

22  review denied 2011 Cal. LEXIS 9160, (Aug.  31, 2011)  ("Teren").[5]  The facts of

23  Teren are strikingly similar to the facts here.  The insured applied for a life

24  insurance policy after being informed about beneficial interest transfers of life

25  _____

26  [4] In both of these cases, the insurer was represented by the same counsel that represents Hartford in this action.  This is therefore their **third** attempt to change the law in California, and as with the two courts before it, this Court should not disturb the law.

27  [5] Significantly, in its opposition to the Trust's motion to dismiss, Hartford relied heavily on the trial court's decision in Teren, which was reversed by the Court of Appeal.  See Hartford's

28  Opposition to Motion to Dismiss, DE 31, pp. 8-9, 11-12.

1   insurance by his son.  Id. at *1.  The insured formed a trust and applied for a life

2   insurance policy, identifying the trust as the owner of the policy.  Id. at *2.  The

3   insured made misrepresentations regarding his net worth in his insurance

4   application.  Id.  Prior to the issuance of the policy, a third party was soliciting

5   investors to acquire a pool of life insurance policies that included the one that the

6   insured had applied for, but had not yet been issued.  Id.  Shortly after the policy

7   did issue, the trust sold the beneficial interest in the policy to a third party, and the

8   insured received $600,000.  Id.  In refusing to find that the intent to ultimately sell

9   the policy negated the existence of an insurable interest, the court emphasized that

10  the question is whether the policies were "supported by an insurable interest at the

11  time they took effect" and that "California law allowed the beneficial interest in the

12  policies to be transferred to a transferee without an insurable interest."  Id. at *7.

13         Furthermore, the court in Teren, in reaching its conclusion, relied heavily on

14  a recent Central District of California case that also considered whether an

15  insured's intent to assign a life insurance policy rendered it void for lack of

16  insurable interest.  Id. at *5-7 (citing Fishman, 638 F. Supp. 2d 1170).  The facts in

17  Fishman are also similar those presented here.  The insured, Dr. Fishman, created a

18  trust and applied for multiple life insurance policies, and designated the trust as the

19  owner and beneficiary of the policies.  See Fishman, 638 F. Supp. 2d at 1174.  In

20  connection with the policies, Dr. Fishman obtained a non-recourse loan from a

21  third party, which he used to pay the premiums for the first two years of the

22  policies.  At the end of the end of this two-year period, instead of repaying the

23  loan, Dr. Fishman assigned the policies to the third-party lender.  Id. at 1175.

24         The insurer, Lincoln, argued that the policies were void for lack of insurable

25  interest because Dr. Fishman did not intend to keep the policies when he obtained

26  them, and the non-recourse loan and trust were merely part of a scheme designed

27  to allow a third party without an insurable interest in Dr. Fishman's life to obtain

28  the policies.  Id. at 1173-74.

The court, however, rejected this contention, observing that there was no California authority "allowing a court to basically look behind the terms and other formalities of an insurance agreement(s) and basically re-write it . . . [in] determining the existence (or lack thereof) of an insurable interest to an insurance policy." <u>Id.</u> at 1178-79.  The court therefore held that the insurer could not "avoid its obligations under the Policies merely because Dr. Fishman or the Trust . . . intended to exercise the right to sell or transfer them at some point in the future. Dr. Fishman's intent, and the intent of the Trust to exercise its rights, standing alone, are legally irrelevant." <u>Id.</u> at 1179.[6]

Consistent with California statutory authority, case law, and public policy, the intent to exercise the contractual and legal right to sell a policy is irrelevant to whether an insurable interest existed at the time a policy takes effect.  Mrs. Barnes, Mr. Barnes, and the Trust all had an insurable interest in Mrs. Barnes's life, and the Trust is entitled to summary judgment on Hartford's first claim that the Policy is void *ab initio* for lack of insurable interest.

## B.  <u>The Evidence Does Not Support Hartford's Claims For Fraud, Fraudulent Inducement, And Negligent Misrepresentation Against The Trust</u>

To prove a claim for fraud, Hartford must prove:  "(a) misrepresentation

---

[6] In 2009, California passed SB 98.  SB 98 became effective on January 1, 2010 and added, *inter alia*, subsection (e) to Insurance Code section 10110.1.  Section 10110.1(e) provides that "[a]ny device, scheme, or artifice designed to give the appearance of an insurable interest where there is no legitimate insurable interest violates the insurable interest laws."  Section 10110.1(e) does not apply to this case for at least two reasons.  First, SB 98, by its terms, states that it "shall not apply to any life settlement contract entered into on or before July 1, 2010."  Stats. 2009, ch. 343, § 8. SB 98 further provides that it only applies "to any transaction involving any life insurance policy in effect, or entered into, on or after the operative date of this act."  Stats. 2009, ch. 343, § 8; Cal. Ins. Code  10110.1(e) (effective January 1, 2010).  The California Court of Appeal has also expressly held that section 10110.1(e) does not apply retroactively.  <u>See Teren</u>, 2011 WL 1878855, at *8-*9 ("[W]e conclude that the amendments to section 10110.1 do not apply retroactively under general principles applicable to new legislation.").  Second, even if section 10110.1(e) were applied retroactively, the statute applies only "where there is no legitimate insurable interest" in the first place.  Here, an insurable interest existed at the time the policy was issued, and there was no scheme to conceal any purported lack of an insurable interest.

---

TRUST'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:10-cv-07560-PSG-DTB

1   (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or

2   'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and

3   (e) resulting damage." <u>Lazar v. Superior Court</u>, 12 Cal. 4th 631, 638 (1996)

4   (omitting citations).  To prove a claim for negligent misrepresentation, Hartford

5   needs to show:  "(1) a misrepresentation . . . (2) without reasonable grounds for

6   believing it to be true, (3) with intent to induce another's reliance on the fact

7   misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the

8   party to whom the misrepresentation was directed, and (5) damages." <u>Fox v.</u>

9   <u>Pollack</u>, 181 Cal. App. 3d 954, 962 (1986).

10       In its complaint, Hartford alleges that the Trust, through the trustee, Gary

11   Barnes, misrepresented:  (i) Doris Barnes's financial condition (including the

12   submission of a fabricated financial statement); (ii) the source of the premium for

13   the Policy; (iii) whether there was an expectation that the Policy would be

14   transferred to a third party; and (iv) whether Mrs. Barnes had been offered any

15   financial inducements to apply for the Policy.  (UF ¶ 49.)

16       Hartford's misrepresentation claims against the Trust fail because the

17   undisputed evidence establishes that the Trust, acting through Gary Barnes as the

18   trustee, did not make any affirmative misrepresentations to Harford and had no

19   knowledge or reason to believe that any of the statements in the application were

20   false.  (UF ¶¶ 13, 14.)  It is undisputed that Gary Barnes did not supply any of the

21   information contained in the application, and that he relied upon his parents to

22   provide the information sought.  (UF ¶¶ 13, 14.)  He did not know that any

23   statements in the application were false, nor did he have any reason to believe that

24   his parents would provide false information.  (UF ¶¶ 13, 14.)  As Mrs. Barnes

25   testified:

26           Q.     So to your knowledge, if there is any false information that was

27       provided in the application, that information would have been completed by

28       Diverse Funding and John Jean; is that right?

1    A.    Yes.

2 (UF ¶ 14, *citing* LeQuang Decl., Ex. A (D. Barnes Depo. Tr.) 129:8-12.)  Mr. Jean

3 also confirmed this:

4          Q.    So if there were any—if there are any answers in the

5          application that are not correct, do you have any reason to believe that Gary

6          Barnes is the one who supplied the answer?

7          A.    No, not at all.

8          Q.    It wouldn't have been Gary Barnes.  Actually, I even feel bad

9          that Gary Barnes is even named and has to go through all this, because Gary

10         Barnes, from the start, did not want to be involved in anything that his dad

11         was involved in.  And I think it was a—I really feel bad about that

12         because—anyway.

13 (UF ¶ 14, *citing* LeQuang Decl., Ex. B (J. Jean Depo. Tr.) 182:20-183:6.)

14         Because Gary Barnes, and through him, the Trust, did not make any of the

15 misrepresentations that Hartford alleges in its complaint, and he was not aware of

16 any misrepresentations that were made by others (if any), the Trust is not liable for

17 fraud.  See <u>People v. Aldana</u>, 94 Cal. Rptr. 3d 831, 839 (2009) (holding that

18 employee could not be liable for fraud for entries on his time sheets, where he

19 signed the time sheets and provided them to his supervisor for completion, because

20 "he did not make any entry on his timesheet."), <u>rev'd on other grounds</u>  <u>Stark v.</u>

21 <u>Superior Court,</u> 52 Cal.4th 368 (2011); <u>see also</u> <u>Yanase v. Auto. Club of So. Cal.</u>,

22 212 Cal. App. 3d 468, 473 (1989) (finding no negligent misrepresentation where

23 the defendant did not make any positive assertions).

24         With respect to Hartford's negligent misrepresentation claim, Gary Barnes

25 had reasonable grounds for believing that the information provided in the

26 application would be provided truthfully by his parents, and he reasonably relied

27 on them to complete the application truthfully.  See <u>Fox</u>, 181 Cal. App. 3d at 962

28 (finding no negligent misrepresentation where attorney who prepared agreement

1  relied on information received from his clients).  The Trust therefore cannot be

2  liable for the misrepresentations, if any, made by Doris Barnes and Mr. Jean.

3       **C.      Hartford's Claims for Fraud And Negligent Misrepresentation**

4             **Are Time-Barred By The Incontestability Clause**

5       The California Insurance Code requires that all life insurance policies that

6  are issued in the State of California contain an incontestability clause providing

7  that the policy "is incontestable after it has been in force, during the lifetime of the

8  insured, for a period of not more than two years after its date of issue . . . ."  Cal.

9  Ins. Code § 10113.5.  Like statutes of limitation, incontestability clauses are

10 intended to provide insureds and beneficiaries of insurance policies with a degree

11 of repose and to encourage insurers to promptly investigate and, if necessary,

12 contest policies.  See Amex Life Ins. Co. v. Super. Ct., 14 Cal. 4th 1231, 1237

13 (1997).

14      California courts give broad effect to incontestability clauses and strictly

15 enforce them against insurers alleging fraud.  See John Hancock Mut. Life Ins. Co.

16 v. Greer, 60 Cal. App. 4th 877, 881-82 (1998) (California courts strictly enforce

17 incontestability clauses, which establish a period of time by which insurers must

18 investigate fraud); United Fid. Life Ins. Co. v. Emert, 49 Cal. App. 4th 941, 945

19 (1996) ("The strict incontestability bar has been applied consistently by the courts

20 both before and after legislative enactment [of Section 10113.5] . . . .").

21      Here, the undisputed facts demonstrate that the incontestability clause bars

22 Hartford's claims.  ███████████████████████████

23 ███████████████████████████████

24 ████████████████████████████████

25 █████████████████████████  (UF ¶ 20.)  ████

26 ███████████████████████████████

27 ████████████████████████████████

28 ███████████████████████████

1    ███████ (UF ¶ 18.)  Hartford did not file this action until October 8, 2010, (UF ¶ 48),

2    ████████████████████████████████████████████████████

3    ███████.  Accordingly, Hartford's claims for fraud, negligent misrepresentation,

4    and conspiracy, Counts II-V, are all barred by the incontestability clause.  See

5    Amex Life Ins. Co., 14 Cal. 4th at 1237 ("[The California Supreme Court]

6    concluded 'that a provision in a life insurance policy to the effect that after being in

7    force the specified time, it shall be incontestable, precludes any defense after the

8    stipulated period on account of false statements warranted to be true, even though

9    such statements were fraudulently made.'") (quoting Dibble v. Reliance Life Ins.

10   Co., 170 Cal. 199, 208 (1915)).

11         Hartford tries to circumvent the incontestability clause (and the Insurance

12   Code) by not "contesting" the Policy, but asserting damages claims for fraud,

13   negligent misrepresentation, and conspiracy.  The Court should reject this attempt

14   to do indirectly what Hartford cannot do directly.  See 44 Am. Jur. 2d Insurance

15   § 778 ("Insurance companies may not bring a tort suit for fraud after the contest

16   period has run, where the fraud action would merely provide a different means to

17   challenge the policy's validity.") (citing Bankers Sec. Life Ins. Soc. v. Kane, 885

18   F.2d 820, 822 (11th Cir. 1989)).  Allowing an insurance company to proceed with

19   fraud and negligent misrepresentation claims after the expiration of the

20   contestability period would eviscerate the incontestability clause entirely.

21   Incontestability clauses serve as "statutes of repose for the beneficiaries of policies,

22   and establish a limited period of time for insurers to investigate and discover

23   possible fraud by their insureds."  See, e.g., United Fidelity Life Ins. Co., 49 Cal.

24   App. 4th at 945; Amex, 14 Cal. 4th at 1267 (acknowledging that an incontestability

25   clause "is in the nature of and serves a similar purpose as statutes of limitations and

26   repose, the wisdom of which is apparent to all reasonable minds.").  The statutory

27   promise of "repose" would mean nothing if insurers like Hartford were allowed

28   additional time to re-underwrite policies and "investigate and discover" alleged

–20–

1  fraud years after the contestability period has expired.  The Court should not allow

2  this.

3        The Trust anticipates that Hartford will argue, as it has in the past, that the

4  incontestability clause does not apply if the Policy is void *ab initio* for lack of

5  insurable interest because the clause will have never come into effect.  First, as

6  discussed in detail above, the Policy is not void for lack of insurable interest, and

7  the incontestability clause is enforceable.  Second, this is but another end run

8  around the incontestability clause that is forbidden by law because lack of

9  insurable interest is the ***only*** ground that a policy may be challenged after the

10  contestability period has expired.  See Paul Revere Life Ins. Co. v. Fima, 105 F.3d

11  490, 492 (9th Cir. 1997) (holding that after the expiration of the contestability

12  period, a policy "may be challenged ***only on the ground*** that it is void *ab initio* for

13  lack of an insurable interest.") (emphasis added).  Hartford cannot bootstrap a

14  fraud claim to an insurable interest challenge to circumvent the contestability

15  period.

16        **D.**     **The Evidence Does Not Support Hartford's Claims Against The**

17             **Trust For Conspiracy To Commit Fraud**

18        The elements of a claim for civil conspiracy are:  (1) the formation and

19  operation of the conspiracy; (2) the wrongful act or acts done pursuant to the

20  conspiracy; and (3) resulting damages.  See Mosier v. S. Cal. Physicians Ins.

21  Exch., 63 Cal. App. 4th 1022, 1048 (1998).  Additionally, because civil conspiracy

22  is "so easy to allege," a plaintiff alleging civil conspiracy has "a weighty burden to

23  prove it."  Choate v. County of Orange, 86 Cal. App. 4th 312, 333 (2000).

24  Accordingly, a plaintiff alleging civil conspiracy must prove:

25             [T]hat each member of the conspiracy acted in concert and
             came to a mutual understanding to accomplish a common and
26             unlawful plan, and that one or more of them committed an
             overt act to further it.  It is not enough that conspiring officers
27             knew of an intended wrongful act, they had to agree—
             expressly or tacitly—to achieve it.  Unless there is a meeting of
28             the minds, 'the independent acts of two or more wrongdoers do

             —21—

1           not amount to a conspiracy.'"

2  Id.

3        Here, Hartford alleges that the Trust, through Gary Barnes, conspired with

4  Mr. Jean, Renaissance Life Insurance Investment Trust II, and Novel Capital

5  Ventures, LLC "to commit fraud to induce Hartford to issue the Policy."

6  Complaint ¶ 80 [DE 1].

7        First, Gary Barnes did not have an agreement with Mr. Jean or anyone else

8  to commit fraud against Hartford, and he did not intend for any fraud to be

9  committed.  (UF ¶ 43.)  He was unaware that Mr. Jean, Renaissance, or Novel

10  planned to commit fraud, and he did not intend for any fraud to be committed.  (UF

11  ¶ 42.)

12        Second, Hartford alleges that the conspiracy involved a fraudulent scheme to

13  "knowingly and purposefully conceal[] the lack of any insurable interest in

14  connection with the procurement of the Policy."  (UF ¶ 50.)  Gary Barnes does not

15  know what an "insurable interest" is, and he did not try to conceal a lack of

16  insurable interest.  (UF ¶ 44.)  In any event, as discussed in detail above, there was

17  no "lack of insurable interest" to conceal.

18        Third, Hartford alleges that the conspiracy involved a scheme to "knowingly

19  and purposefully place[] (and/or caused to be placed) false information on the

20  Application in order to induce Hartford to issue the Policy."  (UF ¶ 50.)  Gary

21  Barnes was totally unaware of any plan or scheme to provide false information to

22  Hartford.  (UF ¶¶ 42-44.)  He was unaware of any plan or scheme by anyone to do

23  anything unlawful or illegal, and he did not help anyone provide any false

24  information to Hartford or anyone else.  (UF ¶¶ 42-44.)

25        Hartford has not and cannot prove the elements of a claim against the Trust

26  for conspiracy to commit fraud, and the Trust is entitled to summary judgment on

27  this claim.

28  ///

1

## IV.   **CONCLUSION**

2

For the above stated reasons, the Trust respectfully requests that the Court

3
grant its motion for summary judgment or, in the alternative, partial summary

4
judgment, and grant such other and further relief as the Court deems just and

5
proper under the circumstances.

6
Dated:  November 29, 2011          ORRICK, HERRINGTON & SUTCLIFFE LLP

7

8
*/s/ Khai LeQuang*
Khai LeQuang

9

10
Attorneys for Defendant Andrew Dominus, Esq., in his capacity as successor trustee of defendant Doris Barnes Family 2008 Irrevocable Trust

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28